**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TAMARA S. FRAZIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 1:20-cv-06725 |
| v. | ) | |
| | ) | Honorable Harry D. Leinenweber |
| EQUIFAX INFORMATION SERVICES, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT EQUIFAX INFORMATION SERVICES, LLC'S MEMORANDUM OF**
**LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................1

II.    BACKGROUND .............................................................................................3

    A.    The Fair Credit Reporting Act ...........................................................3

    B.    Equifax's Relevant Procedures ..........................................................3

    C.    Plaintiff's Relevant Credit History and Equifax's Handling of Her
Disputes ............................................................................................5

    D.    Plaintiff's Alleged Damages ..............................................................6

III.   SUMMARY JUDGMENT STANDARD ........................................................7

IV.   ARGUMENT ..................................................................................................8

    A.    Plaintiff's Claims Fail Because Equifax's Reporting of Plaintiff's
Mortgage Was Accurate. ...................................................................8

        1.    Judge Feinerman has already held that the information was
accurate. ..................................................................................8

        2.    Judge Feinerman's decision was correct, and the same result
should follow here. ...............................................................10

    B.    Plaintiff Cannot Demonstrate that She is Entitled to Any Damages. .............12

        1.    Plaintiff cannot recover statutory damages............................14

    C.    Equifax's Dispute Reinvestigation Process Was Reasonable...........................15

V.    CONCLUSION ............................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aiello v. Providian Fin. Corp.*,
  239 F.3d 876 (7th Cir. 2001) ................................................................13

*Allen v. Portfolio Recovery Assocs., LLC*,
  2020 WL 10502618 (E.D. Wis. Sept. 29, 2020) .........................................4

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..............................................................................8

*Bagby v. Experian Info. Sols., Inc.*,
  162 F. App'x 600 (7th Cir. 2006) ..........................................................13

*Bibbs v. Trans Union, LLC*,
  43 F.4th 331 (3d Cir. 2022) ...........................................................10, 11

*Brill v. TransUnion LLC*,
  838 F.3d 919 (7th Cir. 2016) ................................................................15

*Cohen v. Equifax Info. Servs., LLC*,
  2019 WL 5200759 (S.D.N.Y. Sept. 13, 2019)...........................................15

*Collins v. Am. Red Cross*,
  715 F.3d 994 (7th Cir. 2013) ..................................................................8

*Collins v. Diversified Consultants Inc.*,
  2017 WL 8942568 (D. Colo. Feb. 1, 2017)..............................................15

*Connor v. JP Morgan Chase Bank, N.A.*,
  2016 WL 7201189 (N.D. Ill. Mar. 22, 2016).............................................11

*Crawford v. Countrywide Home Loans, Inc.*,
  647 F.3d 642 (7th Cir. 2011) ..................................................................8

*Denan v. Trans Union LLC*,
  959 F.3d 290 (7th Cir. 2020) .........................................................1, 3, 8

*Edeh v. Equifax Info. Servs., LLC*,
  974 F. Supp. 2d 1220 (D. Minn. 2013)......................................................4

*Frazier v. CreditLink LLC*,
  No. 2022L006743 (Cook Cty. Circ. Ct.) (filed July 29, 2022).....................6

*Frazier v. Dovenmuehle Mortgage, Inc.*,
  No. 1:20-cv-06721, 2022 WL 3445801 (N.D. Ill. Aug. 17, 2022) ........................................2

*Gross v. Private Nat'l Mortg. Acceptance Co., LLC*,
  512 F. Supp. 3d 423 (E.D.N.Y. Jan. 9, 2021) ........................................11

*Hammer v. Residential Credit Sols., Inc.*,
  2015 WL 7776807 (N.D. Ill. Dec. 3, 2015) ........................................14

*Jackson v. Experian Information Solutions, Inc.*,
  236 F. Supp. 3d 1058 (N.D. Ill. 2017) ........................................13

*Jones v. Equifax Info. Servs., LLC*,
  2019 WL 5872516 (W.D. Tenn. Aug. 8, 2019) ........................................11

*Klotz v. Trans Union, LLC*,
  2008 WL 2758445 (E.D. Pa. July 16, 2008) ........................................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ........................................8

*McAlister v. Equifax Info. Servs., LLC*,
  No. 1:22-cv-00050-JRS-TAB, Dkt. 39 (S.D. Ind. Aug. 28, 2022) ........................................11

*McCarty v. Menards*,
  327 F.R.D. 177 (N.D. Ill. 2018) ........................................13

*Ostrander v. Trans Union LLC*,
  2021 WL 3271168 (E.D. Pa. July 30, 2021) ........................................11

*Persinger v. Sw. Credit Sys., L.P.*,
  20 F.4th 1184 (7th Cir. 2021) ........................................14

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007) ........................................3, 14

*Sarver v. Experian Info. Sols.*,
  390 F.3d 969 (7th Cir. 2004) ........................................3, 12, 14

*Selzer v. Lumen Energy Corp.*,
  5 F. App'x 531 (7th Cir. 2001) ........................................13

*Settles v. Trans Union, LLC*,
  2020 WL 6900302 (M.D. Tenn. Nov. 24, 2020) ........................................11

*Wantz v. Experian Info. Sols.*,
  386 F.3d 829 (7th Cir. 2004) ........................................13

**Statutes**

15 U.S.C. § 1681 *et seq.*........................................................................................ *passim*

15 U.S.C. § 1681e(b) .......................................................................................3, 8, 11, 14

15 U.S.C. § 1681i..............................................................................................3, 8, 11, 15

15 U.S.C. § 1681s-2 ..........................................................................................................4

## I.  INTRODUCTION

Plaintiff Tamara Frazier ("Plaintiff" or "Frazier") claims that Defendant Equifax Information Services, LLC ("Equifax") violated the Fair Credit Reporting Act ("FCRA," 15 U.S.C. § 1681 *et seq.*) by reporting "specific late payments" following the preforeclosure sale of her mortgage with Dovenmuehle Mortgage, Inc. ("Dovenmuehle" or "DMI") and by failing to reinvestigate her disputes. *See* Dkt. 1 ¶¶ 12, 39. Specifically, Plaintiff alleges that after her preforeclosure sale, DMI furnished information to Equifax reflecting that Plaintiff was 90 or more days late on her mortgage and that, relying on DMI, Equifax included that information in a consumer report it issued about her. Plaintiff alleges that this reporting resulted in a denial of credit and Plaintiff's purported emotional distress. Plaintiff alleges that the information was inaccurate because, according to Plaintiff, she could not have been delinquent on a mortgage that was already closed as a result of her preforeclosure sale. But, as demonstrated below, the undisputed evidence and black-letter law warrant summary judgment for Equifax.

*First*, each of Plaintiff's claims require her to prove, as a threshold matter, that the information Equifax reported in her consumer report was inaccurate, which she cannot do. *Denan v. Trans Union LLC*, 959 F.3d 290, 297 (7th Cir. 2020). As explained below, the information about which Plaintiff complains (that she was at least 90 days late on her mortgage) is indisputably accurate, so her claims necessarily fail. The consumer report that Equifax issued accurately shows that Plaintiff was more than 90 days late on her mortgage *at the time of the preforelosure sale.* The consumer report does not state, or even suggest, that Plaintiff became delinquent on the mortgage *after* the sale. In fact, the loan officer who informed Plaintiff that her subsequent mortgage application had been denied testified that when he reviewed Plaintiff's consumer report in connection with her subsequent mortgage application, he knew exactly what it meant – that Plaintiff had been at least 90 days late on her mortgage *at the time of the preforeclosure sale.*

Notably, this issue has already been decided by Judge Feinerman in Plaintiff's substantially identical case against DMI. In that case, Judge Feinerman granted summary judgment for DMI on the ground that the reported information was "*undisputedly accurate*" because it reflected that Plaintiff, as she admits, was at least 90 days delinquent on her mortgage at the time of the preforeclosure sale. *See Frazier v. Dovenmuehle Mortgage, Inc.*, No. 1:20-cv-06721, 2022 WL 3445801, at *4 (N.D. Ill. Aug. 17, 2022), *appeal filed*, No. 22-2570 (7th Cir. Sept. 7, 2022) (the "DMI Lawsuit" and "DMI SJ Order") (emphasis added).

*Second*, Plaintiff's claim for *actual damages* fails because Plaintiff cannot establish that she sustained any damages as a result of Equifax's reporting. The FCRA is not a strict liability statute, so even if Plaintiff could show that Equifax reported inaccurate information about her—and she cannot—her claims for actual damages fail because she cannot show that she suffered any cognizable harm as a result of that reporting. Here, Plaintiff contends that she was denied a mortgage because of Equifax's reporting, but the adverse action letter that Plaintiff received and the testimony of Plaintiff's own loan officer conclusively establish that Plaintiff's mortgage application was denied because Plaintiff's debt-to-income ratio was too high—the denial had nothing to do with Equifax's reporting regarding the DMI account. Plaintiff's bare allegations that Equifax "should have known" some specific detail about her mortgage and overridden the reporting provided by DMI are also flatly insufficient to show a "willful" violation of the FCRA so as to justify statutory damages here.

*Third*, Plaintiff's claim that Equifax failed to conduct a reasonable reinvestigation of her dispute also fails. As a Consumer Reporting Agency ("CRA"), Equifax has no visibility into a particular furnisher's relationship with a particular consumer, and Plaintiff does not allege, let alone offer any evidence, to the contrary. For that reason, Equifax is entitled to rely on the

information provided by furnishers unless it has reason to question the veracity of the information or the reliability of the furnisher—evidence that is absent here. *See Denan*, 959 F.3d at 295.

For these reasons, the Court should grant Equifax's motion for summary judgment.

## II. BACKGROUND

### A. The Fair Credit Reporting Act

The FCRA seeks "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA requires CRAs to use "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The FCRA also requires CRAs to reasonably investigate consumer disputes about the accuracy of credit information, which the FCRA describes as "reinvestigation." 15 U.S.C. § 1681i. The FCRA, however, is not a strict liability statute. *See, e.g.*, *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004). To recover actual damages under both Section 1681e(b) and Section 1681i for a negligent violation of the FCRA, the consumer must show not only that the disputed information was inaccurate, but that she was harmed by the inaccuracy. *See id.* at 971. While a plaintiff does not need to prove actual harm to recover statutory damages, she must prove that the CRA *willfully* violated the FCRA, which requires a showing that the challenged interpretation of the FCRA was so clearly wrong as to be "objectively unreasonable." *See Safeco*, 551 U.S. at 70.

### B. Equifax's Relevant Procedures

Equifax has no independent knowledge regarding a particular consumer's financial obligations. Rather, Equifax relies on both data furnishers and consumers—the parties to those obligations—to inform it that a consumer has a particular credit obligation and what the terms of that obligation are. *See* Statement of Undisputed Material Facts ("SMF") ¶¶ 5, 68, 69; *Denan*, 959 F.3d at 295 ("Nor are consumer reporting agencies tribunals; they collect consumer information

supplied by furnishers, compile it into consumer reports, and provide those reports to authorized users."); *Allen v. Portfolio Recovery Assocs., LLC*, 2020 WL 10502618, at *1 (E.D. Wis. Sept. 29, 2020) ("[A] consumer may dispute the accuracy of information in his or her credit report.").

The FCRA prohibits "furnishers" of credit information, such as DMI, from "furnish[ing] any information relating to a consumer to any consumer reporting agency if [they] know[] or [have] reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2. Furnishers report information to Equifax, whether independently or in response to a consumer dispute, using the formatting provided by the Credit Reporting Resource Guide, or CRRG. *See* SMF ¶ 5. Equifax relies on this information to ensure that its credit files are accurate and up to date. *Id.*. And Equifax relies on consumers to notify it if they think information in their credit file is inaccurate, including by sending Equifax a dispute letter, thereby triggering a process called "reinvestigation." *See Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1225 n.3 (D. Minn. 2013) (explaining that, through the Automated Consumer Dispute Verification ("ACDV") system, Equifax "asks a creditor to verify the accuracy of the data, or to advise it of any changes that may be needed" and after receiving a response, updates the consumer's file and "sends the consumer the results of the reinvestigation"); *see also* SMF ¶¶ 7-9.

Upon receipt of a dispute letter, Equifax will contact the furnisher to verify the accuracy of its reporting through the ACDV process. SMF ¶ 7. The furnisher is then required to review and investigate the disputed item. SMF ¶ 8. If the furnisher concludes that the disputed item is inaccurate or incomplete, or if the item cannot be verified, the furnisher must modify the item, delete the item, or permanently block the item from reporting, and report those results back to all CRAs. SMF ¶ 8. Upon receipt of a completed ACDV, Equifax provides a dispute reinvestigation results letter to the consumer, which indicates whether any information in the consumer's credit

file was updated or deleted as a result of the reinvestigation. SMF ¶ 9. The letter also states that a consumer may contact the furnisher if he or she does not agree with the results. SMF ¶ 72.

    C.    <u>Plaintiff's Relevant Credit History and Equifax's Handling of Her Disputes</u>

In 2007, Plaintiff took out a second mortgage with Neighborhood Lending Services ("NLS") on a multi-family property she owned. SMF ¶ 12. It is undisputed that the mortgage obligation Plaintiff incurred with NLS was subsequently assigned to DMI and is the mortgage obligation at issue in this case. SMF ¶ 14. It is also undisputed that Plaintiff fell at least 90 days behind on her payments on that mortgage and that, in January 2016, Plaintiff sold the property at a preforeclosure sale approved by NLS. SMF ¶ 15. Following the preforeclosure sale, NLS informed Plaintiff that the mortgage "will be reported to the credit bureau[s] as 'Settled in full for less than total payoff.'" SMF ¶ 16. Consistent with that statement, throughout 2018, 2019, and 2020, DMI furnished information to Equifax reflecting that Plaintiff's mortgage was 90 to 119 days past due. *See* SMF ¶¶ 21, 27, 33, 39, 44, 50.

Throughout 2018, 2019, and 2020, Plaintiff sent numerous dispute letters to Equifax challenging myriad aspects of her credit file. Each of the letters was prepared by a credit repair organization called "Credit Nerds" that ultimately referred Plaintiff to her counsel in this case. *See* SMF ¶ 17. Six of those letters referenced the DMI account in one form or another. The first four of those letters simply listed the DMI account—along with numerous other accounts—and demanded that it be "removed" from Plaintiff's credit file, without explanation as to why. *See* SMF ¶¶ 18-19, 24-25, 30-31, 36-37. The fifth letter, dated July 2, 2020, was the first to dispute the payment status of the DMI account, which was 90 to 119 days past due—*i.e.*, the undisputed status of the loan at the time of the preforeclosure sale. SMF ¶ 42. That dispute, however, was voluntarily withdrawn by Plaintiff around one month later. SMF ¶ 47. Shortly thereafter, on September 15, 2020, Plaintiff sent a final letter disputing the reporting of the DMI account and stating that "This

account has been closed and satisfied since 2016. The late payments in 2019 and 2020 aren't correct." SMF ¶ 48.

In response to each letter, Equifax sent ACDVs, along with a copy of the dispute letter, to DMI to either confirm or update the information in Plaintiff's credit file. SMF ¶¶ 20, 26, 32, 38, 43, 49, 71. Each time, DMI confirmed the reporting. Specifically, DMI responded that the current balance, amount past due, and actual payment were $0, that the last payment date was September 2015, and that the account had been closed in January 2016. SMF ¶¶ 21, 27, 33, 39, 44, 50. DMI also provided a "Payment Rating" of 3, denoting that Plaintiff's mortgage was "90 to 119 days past due date." *Id.* And DMI provided a narrative code indicating that the account was "paid for less than full balance." *Id.* At the conclusion of each reinvestigation, Equifax sent Plaintiff a letter reflecting any changes or confirmations of information in her credit file, which was updated to be consistent with DMI's reporting. SMF ¶¶ 22-23, 28-29, 34-35, 40-41, 45-46, 51.

### D.    Plaintiff's Alleged Damages

In support of her request for actual damages, Plaintiff claims that, because of Equifax's supposedly inaccurate reporting, she was denied a mortgage and lost time in pursuing a mortgage. SMF ¶ 52. Specifically, in 2020, Plaintiff applied for a mortgage with Mutual Federal Bank. SMF ¶ 53. As part of the loan approval process, Mutual Federal Bank procured a copy of Plaintiff's "Tri-Merge" credit report from a non-party called CreditLink.[1] SMF ¶ 54. A "Tri-Merge" credit report is a report compiled by an aggregator from information provided in reports by the three major CRAs: Experian, TransUnion and Equifax. SMF ¶ 55. In the report obtained by Mutual Federal Bank, dated September 10, 2020, all three CRAs reported Plaintiff's DMI mortgage as "settled" and "account paid for less than full balance" with a $0 payment, a $0 balance, and $0

---

[1] Plaintiff has subsequently sued CreditLink, asserting essentially identical claims to those asserted here. *See* Ex. CC, *Frazier v. CreditLink LLC*, No. 2022L006743 (Cook Cty. Circ. Ct.) (filed July 29, 2022).

past due. SMF ¶ 56. CreditLink also included a line for late dates reflecting that the account had a status of 90 days past due for various months in the last two years. *Id.* And the report indicated that the date of last activity for the DMI mortgage was October 2015. *Id.*

Plaintiff's loan officer at Mutual Federal Bank, David Holmes, reviewed the CreditLink report and informed Plaintiff that Mutual Federal Bank would not be able to proceed with the loan. Mr. Holmes testified that, based on the CreditLink report, he understood that "Ms. Frazier settled her [DMI] account for less than the full balance in or around October of 2015[.]" SMF ¶ 65. Mr. Holmes did not read the CreditLink report to mean that Plaintiff owed any money on her loan after the preforeclosure sale. *Id.* Rather, he understood the 90-days late payment status indicators to mean that Ms. Frazier was late *at the time of the preforeclosure sale*. *Id.* Moreover, Mr. Holmes testified that Plaintiff's mortgage was denied because her debt-to-income ratio was too high. SMF ¶ 64. Consistent with Mr. Holmes's testimony, the adverse action letter that Mutual Federal Bank contemporaneously sent to Plaintiff stated that her loan application was denied because of her debt-to-income ratio—*not* because of the late payment history relating to her DMI account. SMF ¶¶ 58-63. Notably, the adverse action letter included an option to mark "unacceptable payment record on previous mortgage" as the reason for denial, but that box was not marked. SMF ¶ 60. Instead, Mutual Federal marked "[e]xcessive obligations" and "[i]nsufficient income for total obligations" as the reason for denial. SMF ¶ 59.

Plaintiff also claims emotional distress damages relating to Equifax's reporting of the DMI mortgage, including "humiliation from being denied that loan" with Mutual Federal Bank, stress from worrying about her family, headaches, lack of sleep, frustration, and helplessness. SMF ¶ 66. Plaintiff never sought medical intervention or diagnosis for these alleged injuries. SMF ¶ 67.

## III.    SUMMARY JUDGMENT STANDARD

"'The court shall grant summary judgment if the movant shows that there is no genuine

7

dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 647 (7th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). Viewing "the evidence in the light most favorable to the nonmoving party, . . . . [a] genuine issue of material fact exists only where there is enough evidence that a reasonable jury could return a verdict in favor of the non-moving party." *Collins v. Am. Red Cross*, 715 F.3d 994, 997 (7th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations omitted).

## IV.    ARGUMENT

### A.    Plaintiff's Claims Fail Because Equifax's Reporting of Plaintiff's Mortgage Was Accurate.

As a threshold matter, a CRA "cannot be liable under either [Section 1681e(b) or Section 1681i of FCRA] if it did not report inaccurate information." *Denan*, 959 F.3d at 297. Plaintiff cannot create a triable issue of fact on the threshold element of inaccuracy because, as demonstrated below, the information about which she complains was "indisputably accurate."

####     1.    *Judge Feinerman has already held that the information was accurate.*

Plaintiff filed her lawsuits against Equifax and DMI on the same day, November 12, 2020, alleging substantially identical, parallel claims against both defendants.[2] SMF ¶¶ 73. Like here, in

---

[2] Notably, Plaintiff sought to take a third-party deposition of Equifax in the DMI Lawsuit, but Judge Feinerman prohibited the deposition, ruling that "Plaintiff may not take a Rule 45 deposition of Non-Party

the DMI Lawsuit, Plaintiff alleged that she incurred a mortgage with DMI in 2007 on which she became delinquent. SMF ¶ 74. She alleged that she entered into a preforeclosure sale in 2016, settled the account for less than the full balance, and no longer had any obligation on the loan. *Id.* And she alleged that she disputed DMI's reporting of the loan with "historical late payments in 2018 and 2019" with Equifax, but DMI did not conduct a reasonable investigation and continued to inaccurately report her loan to Equifax and Trans Union. *Id*.

On August 17, 2022, Judge Feinerman granted summary judgment for DMI, holding that the information DMI had reported to Equifax—that Plaintiff was 90 days late on her mortgage— was indisputably true. SMF ¶ 75; *see also* Ex. Q (EIS-FRAZIER-PROD-001436 to 1439). Judge Feinerman rejected Plaintiff's contention that the Pay Rate code of 3 that DMI furnished to Equifax signified that Plaintiff's loan was *currently* delinquent. DMI SJ Order at 3-4 ("The information furnished to the CRAs by [DMI] conclusively refutes Frazier's interpretation of the 'Pay Rate' code."). Instead, Judge Feinerman concluded there was only one logical interpretation of Plaintiff's credit file:

> [T]he loan had been ninety days past due when it was closed, having been paid in full for less than the remaining balance. No reasonable person could construe a 'closed,' 'paid in full' loan with '$0' due as being *currently* delinquent. The only logical interpretation of the information that [DMI] furnished is that the loan had been ninety days delinquent as of the 'Date of Account Information' or 'Date Closed.' And that fact is undisputedly accurate.

*Id.* This ruling related to the very same information that Plaintiff claims was inaccurate in this case. Specifically, it is undisputed that information Equifax allegedly reported was the same information that DMI furnished to Equifax and then repeatedly confirmed in response to each of Plaintiff's dispute letters. *See* SMF ¶ 76. DMI furnished information to Equifax reflecting that Plaintiff had

---

Equifax because it simultaneously and unjustifiably filed separate lawsuits against [DMI] and Equifax based on the *same core set of operative facts*." DMI Lawsuit, Dkt. 53 (emphasis added).

a closed account, with $0 past due, $0 in monthly payment obligations, that had been closed in January 2016, and that "paid in full for less than the remaining balance." DMI SJ Order at 2. That is the same information Equifax allegedly provided to Mutual Federal Bank by way of the CreditLink report. *See* SMF ¶ 57. The ruling should therefore be adopted by this Court.

2.    *Judge Feinerman's decision was correct, and the same result should follow here.*

Judge Feinerman's decision that Equifax's reporting was accurate is grounded in well-settled law governing claims under the FCRA and directing courts to perform a holistic review of all information in a particular report. Of particular note is the Third Circuit's recent holding in *Bibbs v. Trans Union, LLC*, 43 F.4th 331 (3d Cir. 2022), on which Judge Feinerman heavily relied. In *Bibbs*, the plaintiffs argued—like Plaintiff here—that their credit files were inaccurate because those files showed certain student loan accounts as being "120 Days Past Due" even though the accounts had previously been closed and transferred. *Id.* at 337. Also like Plaintiff here, the *Bibbs* plaintiffs did not dispute that the accounts were, in fact, past due at the time they were closed. *Id.* After reviewing the entire entry about the student loans in question, which included an account closed date, a notation that the accounts were closed, and an account balance of $0, the Third Circuit held that the student loans had not been inaccurately reported: "Appellants' reports contain multiple conspicuous statements reflecting that the accounts are closed and Appellants have no financial obligations to their previous creditors. . . . [A] reasonable interpretation of the reports in their entirety is that the Pay Status of a closed account is historical information." *Id.* at 344.

The Equifax report that Plaintiff challenges here contains the exact same information that the *Bibbs* court found dispositive on the issue of accuracy. Specifically, Equifax reported the DMI mortgage with a "closed" date of January 2016, with $0 in the balance amount, amount past due, actual payment amount, scheduled payment amount, charge off amount, and balloon pay amount

10

fields, and "90 – 119 days past due" in the "Status" section. SMF ¶¶ 46, 51. The only logical interpretation of that reporting—under *Bibbs* and numerous other cases—is that Plaintiff has no continuing obligation under the now-closed account, but was at least 90 days late at the time the loan was closed. *See Connor v. JP Morgan Chase Bank, N.A.*, 2016 WL 7201189, at \*3 (N.D. Ill. Mar. 22, 2016) (granting motion to dismiss where the plaintiff contended that a trade line in his credit report gave the false impression that he was still making payments but did "not address the fact that the balance amount and amount past due are listed at $0"); *Gross v. Private Nat'l Mortg. Acceptance Co., LLC*, 512 F. Supp. 3d 423, 426-427 (E.D.N.Y. Jan. 9, 2021) (granting CRA's motion to dismiss and noting that "[i]f a creditor read the 'Pay Status' entry in isolation, the creditor might conclude that the account was currently past due. But when the creditor read the rest of the entries, the creditor would surely forego that conclusion. . . . An account with a $0 balance cannot currently be past due[.]").[3] Based on this authority, Equifax's reporting is "undisputably accurate," so Equifax cannot be liable under § 1681e(b) or § 1681i.

In addition to being "undisputably accurate," Equifax's reporting regarding Plaintiff's mortgage was not "materially misleading." Like the Third Circuit in *Bibbs*, courts across the country have repeatedly concluded that a credit report cannot be materially misleading where a holistic review of the report does not support the plaintiff's proffered (self-serving) theory. *See, e.g.*, *supra* p. 11 & n.3; *see also McAlister v. Equifax Info. Servs., LLC*, No. 1:22-cv-00050-JRS-TAB, Dkt. 39 at 5-6 (S.D. Ind. Aug. 28, 2022) (attached as Ex. DD) (declining to consider

---

[3] *Ostrander v. Trans Union LLC*, 2021 WL 3271168, at \*8 (E.D. Pa. July 30, 2021) (upon "[r]eading these entries together, rather than only the payment status line in isolation, the court finds that the only logical conclusion that can be gleaned from the plaintiff's credit report is that the plaintiff was *previously* 60 days past due"); *Settles v. Trans Union, LLC*, 2020 WL 6900302, at \*4 (M.D. Tenn. Nov. 24, 2020) ("Plaintiff admits that never brought the account current–instead, he defaulted, and the account was closed while it was more than 120 days past due. Reporting a 'pay status' as '120 days past due date' in these circumstances would not reasonably mislead a creditor to believe Plaintiff is currently past due on this loan."); *Jones v. Equifax Info. Servs., LLC*, 2019 WL 5872516, at \*4 (W.D. Tenn. Aug. 8, 2019) (similar).

plaintiff's arguments that Equifax's reporting was misleading given that the credit report accurately showed that plaintiff's accounts were closed, had $0 balances, were more than 120 days past due when they were closed, and were verified as such by the furnisher). Here, the Court need not speculate about how a user of credit reports would interpret Equifax's reporting. As discussed *supra* p. 7, the loan officer who handled Plaintiff's loan application correctly understood her credit report to mean that, with respect to the DMI mortgage, Plaintiff "settled her account for less than the full balance in or around October of 2015" – and, thus, had no continuing payment obligations on that mortgage. SMF ¶ 65. As a result, not only has Plaintiff failed to meet her burden to show that Equifax's report was materially misleading, the record conclusively refutes any such assertion.

B.    Plaintiff Cannot Demonstrate that She is Entitled to Any Damages.

As set forth above, Equifax is entitled to summary judgment because Plaintiff cannot make even a threshold showing that the information about which she complains was inaccurate, and it is axiomatic that a FCRA plaintiff cannot predicate a claim for actual damages on the reporting of accurate information. Even if Plaintiff were able to show that the information about which she complains was inaccurate, however, Plaintiff must also show that she suffered actual harm as a result of the reporting of that information in order to recover actual damages. *See Sarver*, 390 F.3d at 971. Plaintiff cannot make any such showing here.

Plaintiff claims she was harmed because Equifax's purportedly inaccurate reporting of her DMI mortgage caused her subsequent mortgage application to be denied. But the undisputed facts in this case establish that her mortgage application was not denied because of Equifax's reporting regarding her DMI mortgage or related payment history. Rather, her mortgage was denied because her then-current debt-to-income ratio exceeded the debit-to-income ratio limit set by the prospective lender. SMF ¶ 64. Plaintiff invites the Court to disregard this undisputed evidence and to join her in speculating that the loan process might have turned out differently absent the

(accurate) information regarding her DMI mortgage. But there is no factual basis for Plaintiff's speculation, which simply provides no basis for Plaintiff's claims to survive summary judgment. *See*, *e.g.*, *Selzer v. Lumen Energy Corp.*, 5 F. App'x 531, 533 (7th Cir. 2001) ("[S]peculation does not create a genuine issue of fact necessary to survive summary judgment."); *McCarty v. Menards*, 327 F.R.D. 177, 187 (N.D. Ill. 2018) (same).

Plaintiff's claim for emotional distress damages also fails. The Seventh Circuit has held that a plaintiff seeking to recover damages for emotional distress under the FCRA must meet a "high threshold for proof[.]" *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001). "Where the plaintiff's own testimony is the only evidence of emotional damages, she must explain her injury 'in reasonable detail' and not rely on conclusory statements, unless the 'facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action.'" *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 605 (7th Cir. 2006) (quoting *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 834 (7th Cir. 2004)).

Here, Plaintiff admits that she did not seek any medical treatment for her emotional distress, and there is no other evidence to corroborate Plaintiff's self-serving allegations that she suffered emotional distress. SMF ¶¶ 66-67. Any claim based on this purported "emotional distress" therefore fails. *See Bagby*, 162 F. App'x at 605 (finding "self-serving and conclusory statements about [] emotional distress" insufficient to support a claim); *Jackson v. Experian Information Solutions, Inc.*, 236 F. Supp. 3d 1058, 1064 (N.D. Ill. 2017) (testimony that Plaintiff had difficulty sleeping, worried about his finances, and was irritable and agitated were insufficient to establish injury); *Wantz*, 386 F.3d at 834 (similar). Moreover, even if Plaintiff's generic assertions of emotional distress stemming from the denial of her loan application were actionable (they are not), Plaintiff must still show that her emotional distress was *caused by Equifax's actions. Hammer v.*

13

*Residential Credit Sols., Inc.*, 2015 WL 7776807, at *24 (N.D. Ill. Dec. 3, 2015). But Plaintiff cannot show that Equifax's reporting of the DMI loan—as opposed to the debt-to-income ratio issue identified in both Mr. Holmes' testimony and the adverse action latter—caused Plaintiff's loan application to be denied.

1.     *Plaintiff cannot recover statutory damages.*

To recover statutory damages, a plaintiff must show that the defendant *willfully* violated the FCRA. As the Supreme Court held in *Safeco*, a willfulness claim will lie only when a CRA "knowingly" violates the FCRA or its procedures are "objectively unreasonable" under the text of the FCRA or under "guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have warned [the CRA] away from the view it took." *Safeco*, 551 U.S. at 69-70; *see also Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1195 (7th Cir. 2021) (same). In other words, for a willfulness claim to succeed, the CRA's conduct must be more than merely unreasonable; it must run a risk of violating the law "substantially greater" than the risk associated with mere carelessness. *Id.* at 69. Plaintiff cannot meet this standard here.

At most, Plaintiff alleges that Equifax "had knowledge of the fact that the loan had been settled in full years earlier than 2018" and therefore should not have "continued to report Plaintiff with specific late payments." Compl. ¶ 12. But Plaintiff's self-serving assertion is not based on the plain language of the FCRA, guidance from the courts of appeals, or authoritative direction from the FTC or the Consumer Financial Protection Bureau. To the contrary, Plaintiff's position is squarely contradicted by binding appellate authority in this Circuit. In *Sarver*, the Seventh Circuit Court of Appeals held that, as a matter of law, a CRA complies with Section 1681e(b) if it correctly reports information supplied by furnishers like DMI absent prior notice that the information is inaccurate. *Sarver*, 390 F.3d at 972. As set forth above, that is exactly what Equifax did.

### C. Equifax's Dispute Reinvestigation Process Was Reasonable.

Plaintiff cannot maintain her FCRA claims against Equifax because her DMI mortgage was reported accurately and because she is not entitled to any damages. But even if that were not the case, her claim under § 1681i would still fail because Equifax's reinvestigation of her disputes was reasonable.[4] Specifically, by sending Plaintiff's disputes to DMI so that DMI, as the furnisher of the disputed information, could confirm its accuracy, Equifax fully complied with its obligations under the FCRA. *See Brill v. TransUnion LLC*, 838 F.3d 919, 921 (7th Cir. 2016) (reliance on lender to investigate dispute "was an appropriate procedure, especially as TransUnion couldn't readily locate any other document that might have resolved the issue."). *See also Collins v. Diversified Consultants Inc.*, 2017 WL 8942568, at *14 (D. Colo. Feb. 1, 2017) (finding that CRA's reliance on furnishers was reasonable absent evidence that furnishers were unreliable).

## V. CONCLUSION

For foregoing reasons, Equifax respectfully requests that the Court grant its motion for summary judgment.

---

[4] Under the FCRA, Equifax has no obligation to reinvestigate a dispute unless "the consumer notifies the agency directly." 15 U.S.C. § 1681i(a)(1)(A). To prevail on a claim under § 1681i, the consumer must show that *she* disputed directly with the CRA. *See, e.g.*, *Klotz v. Trans Union, LLC*, 2008 WL 2758445, at *4-5 (E.D. Pa. July 16, 2008) (granting summary judgment for CRA where consumer simply signed and sent dispute letters prepared by a credit repair organization); *see also Cohen v. Equifax Info. Servs., LLC*, 2019 WL 5200759, at *6 (S.D.N.Y. Sept. 13, 2019), *aff'd*, 827 F. App'x 14 (2d Cir. 2020). Here, Plaintiff has admitted that a credit repair organization, Credit Nerds, helped her prepare the dispute letters she sent to Equifax. SMF ¶ 17. While her claim under § 1681i must fail because the information she disputed was accurate, it also fails because she cannot meet the FCRA's directness requirement.

Respectfully submitted this 3rd day of October 2022.

**KING & SPALDING LLP**

By: */s/ Rachael M. Trummel*

Zachary A. McEntyre (admitted *pro hac vice*)
James Matthew Brigman (admitted *pro hac vice*)
1180 Peachtree Street NE
Atlanta, GA 30309
Ph.: (404) 572-4600
Fax: (404) 572-5100
Email: zmcentyre@kslaw.com
Email: mbrigman@kslaw.com

Rachael M. Trummel (ARDC # 6274278)
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Ph.: (312) 764-6922
Fax: (312) 995-6330
Email: rtrummel@kslaw.com

*Counsel for Defendant*
*Equifax Information Services LLC*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 3, 2022, a copy of the foregoing was electronically served on all counsel of record via the Court's ECF filing system.

*<u>/s/ Rachael M. Trummel</u>*
Rachael M. Trummel