IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| TAMARA S. FRAZIER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 1:20-cv-6725 |
| v. | ) | |
| | ) | Honorable Harry D. Leinenweber |
| EQUIFAX INFORMATION SERVICES, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff, Tamara Frazier ("Plaintiff"), hereby submits this Response to Defendant Equifax Information Services, LLC's Statement of Facts, pursuant to LR 56.1(e) and a Statement of Additional Facts pursuant to LR 56.1(b)(3) and L.R. 56.1(d).

| | **Defendant Equifax's Facts** | **Plaintiff's Response** |
|---|---|---|
| 1. | Plaintiff Tamara Frazier ("Plaintiff" or "Frazier") is a natural person and a resident of Illinois. Compl. ¶ 4. | Admit. |
| 2. | Plaintiff is a consumer as defined in 15 U.S.C. §1681a(c). | Admit. |
| 3. | Defendant Equifax Information Services, LLC ("Equifax") is a business entity with its principal place of business in Atlanta, Georgia. Compl. ¶ 5. | Admit. |
| 4. | Equifax is a consumer reporting agency ("CRA") as defined in 15 U.S.C. § 1681a(f). As such, Equifax "regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties[.]" | Admit. |
| 5. | Equifax relies on furnishers of credit information to report credit information to Equifax using the formatting provided by the Credit Reporting Resource Guide ("CRRG") to ensure that Equifax's credit files are | Admit in part. Admit that this represents Ms. Willis' testimony. Plaintiff objects to this statement as it represents only a partial truth |

| | | |
|---|---|---|
| | accurate and up to date. Ex. A (Willis Dep.) at 158:10-14, 172:20-23. | regarding Equifax's responsibility to ensure that credit files are accurate and up to date. Equifax also has direct responsibilities to consumers under the FCRA to ensure their credit files are accurate and up to date. |
| 6 | If a consumer thinks that information on her credit file is inaccurate, she may initiate a dispute with Equifax by sending a dispute letter, triggering a process called "reinvestigation." Ex. A (Willis Dep.) at 9:18-19. | Admit. |
| 7. | Upon receipt of a dispute letter, Equifax then contacts the furnisher of the disputed information to verify the accuracy of its reporting through the Automated Consumer Dispute Verification ("ACDV") process. Ex. A (Willis Dep.) at 73:11-14. | Admit. |
| 8. | The furnisher is then required to review and investigate the disputed item. 15 U.S.C. § 1681s-2(b)(1)(A). If the furnisher concludes that the disputed item is inaccurate or incomplete, or if the item cannot be verified, the furnisher must modify the item, delete the item, or permanently block the item from reporting, and report those results back to all CRAs. 15 U.S.C. § 1681s-2(b)(1)(D)-(E). | Admit. |
| 9. | Upon receipt of a completed ACDV, Equifax provides a dispute reinvestigation results letter to the consumer, which indicates whether any information in the consumer's credit file was updated or deleted as a result of the reinvestigation. Ex. A (Willis Dep.) at 215:11-14. | Admit that this is the testimony of Ms. Willis regarding Equifax's policies. |
| 10. | Plaintiff alleges that Equifax violated the Fair Credit Reporting Act ("FCRA," 15 U.S.C. § 1681 *et seq.*), a federal statute. This Court has subject matter jurisdiction over claims arising under the FCRA pursuant to 28 U.S.C. § 1331. | Admit. |
| 11. | Equifax answered Plaintiff's Complaint on January 20, 2021, thereby submitting to this Court's jurisdiction and waiving any venue challenges. Dkt. 9. | Admit. |
| 12. | In 2007, Plaintiff Tamara Frazier ("Plaintiff") incurred a second mortgage with Neighborhood Lending Services ("NLS") on a multi-family property she owned. Ex. B (Frazier Dep.) at 29:1-4, 30:6. | Admit. |
| 13. | Frazier bought the property subject to the NLS mortgage as an investment. Ex. B (Frazier Dep.) at 30:21-31:3. | Admit. |

| | | |
|---|---|---|
| 14. | Dovenmuehle Mortgage, Inc. ("Dovenmuehle") is the sub-servicer of Plaintiff's NLS mortgage, and the NLS mortgage is the same mortgage that Equifax reported as belonging to Dovenmuehle. Ex. B (Frazier Dep.) at 28:14-16. | Upon information and belief, Admit. |
| 15. | In January 2016, after falling behind on her payments, Plaintiff sold the property at a preforeclosure sale, which was approved by NLS. Ex. C (Frazier Ex. 1). | Admit. |
| 16. | Following the preforeclosure sale, NLS informed Plaintiff that the mortgage "will be reported to the credit bureau[s] as 'Settled in full for less than total payoff.'" Ex. C (Frazier Ex. 1). | Admit that the letter from NLS dated January 7, 2016 speaks for itself. |
| 17. | Plaintiff testified at her deposition that, in 2020, she began working with a credit repair organization called Credit Nerds to "educate [her] on the Fair Credit Reporting Act[.]" Ex. B (Frazier Dep.) at 7:13-19, 11:16-21, 46:25-57:3. | Admit. |
| 18. | On September 23, 2018, Plaintiff sent a letter to Equifax requesting that it "investigate[] and correct[]" several accounts and remove the accounts "from all current and future reports." Ex. D (EIS-FRAZIER-PROD-000377). | Admit that the September 23, 2018 letter speaks for itself. |
| 19. | The letter listed 15 total accounts, including Plaintiff's NLS/Dovenmuehle account, in addition to Plaintiff's Chapter 7 bankruptcy. Ex. D (EIS-FRAZIER-PROD-000377). | Admit that the September 23, 2018 letter speaks for itself. |
| 20. | Upon receipt of the September 23, 2018 letter, which Equifax assigned the Dispute Code 053 ("Consumer states inaccurate information. Provide or confirm complete ID . . . ."), Equifax sent an ACDV to Dovenmuehle. Ex. E (EIS-FRAZIER-PROD-000345 to 348). | Upon information and belief, admit. The October 1, 2018 ACDV speaks for itself. |
| 21. | Dovenmuehle responded to the September 23, 2018 letter by providing several narrative codes, including codes indicating that the account was "closed or paid" with a zero balance, that "account paid for less than full balance," and that the account was a second mortgage. Dovenmuehle additionally indicated that the current balance, amount past due, scheduled monthly payment, and actual payment were $0, the last payment date was October 2015, and the closed date was January 2016. Dovenmuehle also provided a "Payment Rating" of 3, signifying that Plaintiff's mortgage was "90 to 119 days past due date." Ex. E (EIS-FRAZIER-PROD-000345 to 348). | Admit that the October 1, 2018 ACDV speaks for itself. Plaintiff clarifies that the Payment Rating of 3 signifies that Plaintiff's mortgage was "90 to 119 days past due date" at the time immediately prior to the account being closed. Deposition of David Fagan ("Fagan Dep."), Plaintiff's Exhibit 1, p. 82:21-83:7. |

| | | |
|---|---|---|
| 22. | On October 22, 2018, Equifax sent a letter to Plaintiff confirming that it had completed its reinvestigation of her dispute. Ex. F (EIS-FRAZIER-PROD-000384 to 405). | Admit that the October 22, 2018 letter from Equifax speaks for itself. |
| 23. | In the October 22, 2018 letter, Equifax informed Plaintiff that her Dovenmuehle mortgage had been reported with a $0 balance, $0 actual payment amount, and $0 scheduled payment amount, as well as a date of last payment of October 2015, a date of first delinquency of October 2015, and a closed date of January 2016. The Account Status was "90 to 119 days past due," and the Additional Information section included statements that the account was "Closed or Paid Account/Zero Balance," and "Account Paid For Less Than Full Balance." Ex. F (EISFRAZIER-PROD-000389 to 405). | Admit that the October 22, 2018 letter from Equifax speaks for itself. |
| 24. | On November 8, 2018, Plaintiff sent a letter to Equifax requesting that it "reinvestigate these accounts, and remove them from [her] credit report." Ex. G (FRAZIER-EISPROD-000755). | Admit that the November 8, 2018 letter from Plaintiff speaks for itself. |
| 25. | The letter listed ten accounts, including Plaintiff's NLS/Dovenmuehle account, as well as Plaintiff's Chapter 7 bankruptcy. Ex. G (FRAZIER-EIS-PROD-000755). | Admit that the November 8, 2018 letter from Plaintiff speaks for itself. |
| 26. | Upon receipt of the November 8, 2018 letter, which Equifax assigned the Dispute Code 053 ("Consumer states inaccurate information. Provide or confirm complete ID . . ."), Equifax sent an ACDV to Dovenmuehle. Ex. H (EIS-FRAZIER-PROD-000735 to 738). | Upon information and belief, admit. |
| 27. | Dovenmuehle responded to the November 8, 2018 letter by providing several narrative codes, including codes indicating that the account was "closed or paid" with a zero balance, that "account paid for less than full balance," and that the account was a second mortgage. Dovenmuehle additionally indicated that the current balance, amount past due, scheduled monthly payment, and actual payment were $0, the last payment date was September 2015, and the closed date was January 2016. Dovenmuehle also provided a "Payment Rating" of 3, signifying that Plaintiff's mortgage was "90 to 119 days past due date." Ex. H (EIS-FRAZIER-PROD-000735 to 738). | Admit that the November 15, 2018 ACDV speaks for itself. Plaintiff denies any conclusion Defendant draws from the ACDV. |
| 28. | On December 3, 2018, Equifax sent a letter to Plaintiff confirming that it had completed its reinvestigation of her dispute. Ex. I (EIS-FRAZIER-PROD-000762 to 767). | Admit that the December 3, 2018 letter from Equifax speaks for itself. |

| 29. | In the December 3, 2018 letter, Equifax informed Plaintiff that her Dovenmuehle mortgage had been reported with a $0 balance, $0 actual payment amount, and $0 scheduled payment amount, as well as a date of last payment of September 2015, a date of first delinquency of October 2015, and a closed date of January 2016. The Account Status was "90 to 119 days past due," and the Additional Information section included a statement that "Account Paid For Less Than Full Balance." Ex. I (EIS-FRAZIER-PROD-000767). | Admit that the December 3, 2018 letter from Equifax speaks for itself. |
|---|---|---|
| 30. | On September 30, 2019, Plaintiff sent a letter to Equifax requesting that it "REINVESTIGATE" several accounts and "clear them from [her] record." Ex. J (EIS-FRAZIERPROD-001268). | Admit that the September 30, 2019 letter from Plaintiff speaks for itself. |
| 31. | The letter listed seven accounts, including Plaintiff's NLS/Dovenmuehle account, in addition to Plaintiff's Chapter 7 bankruptcy. Ex. J (EIS-FRAZIER-PROD-001268). | Admit that the September 30, 2019 letter from Plaintiff speaks for itself. |
| 32. | Upon receipt of the September 30, 2019 letter, which Equifax assigned the Dispute Code 053 ("Consumer states inaccurate information. Provide or confirm complete ID . . . ."), Equifax sent an ACDV to Dovenmuehle. Ex. K (EIS-FRAZIER-PROD-001246 to 1249). | Upon information and belief, admit. |
| 33. | Dovenmuehle responded to the September 30, 2019 letter by providing several narrative codes, including codes indicating that the account was "closed or paid" with a zero balance, that "account paid for less than full balance," and that the account was a second mortgage. Dovenmuehle additionally indicated that the current balance, amount past due, scheduled monthly payment, and actual payment were $0, the last payment date was September 2015, and the closed date was January 2016. Dovenmuehle also provided a "Payment Rating" of 3, signifying that Plaintiff's mortgage was "90 to 119 days past due date." Ex. K (EIS-FRAZIER-PROD-001246 to 1249). | Admit that the October 15, 2019 ACDV speaks for itself. Plaintiff denies any conclusion Defendant draws from the ACDV. |
| 34. | On October 26, 2019, Equifax sent a letter to Plaintiff confirming that it had completed its reinvestigation of her dispute. Ex. L (EIS-FRAZIER-PROD-001272 to 1275). | Admit that the October 26, 2019 letter from Equifax speaks for itself. |
| 35. | In the October 26, 2019 letter, Equifax informed Plaintiff that her Dovenmuehle mortgage had been reported with a $0 balance, $0 actual payment amount, and $0 scheduled payment amount, as well as a date of last payment of September 2015, a date of first delinquency of October | Admit that the October 26, 2019 letter from Equifax speaks for itself. Plaintiff clarifies that the letter reported the account with an |

|    |    |    |
|----|----|----|
|    | 2015, and a closed date of January 2016. The Account Status was "90 to 119 days past due," and the Additional Information section included a statement that "Account Paid For Less Than Full Balance." Ex. L (EIS-FRAZIER-PROD-001275). | "Account History with Status Codes" section that listed Plaintiff with a "3" in August, June, and January 2019, and December 2018. |
| 36. | On November 12, 2019, Plaintiff sent a letter to Equifax requesting that it "verify the following accounts" and provide her "with a copy of an updated and corrected credit report showing that these items have been deleted." Ex. M (EIS-FRAZIER-PROD-001351 to 1352). | Admit that the November 12, 2019 letter from Plaintiff speaks for itself. |
| 37. | The letter listed four accounts, including Plaintiff's NLS/Dovenmuehle account, in addition to Plaintiff's Chapter 7 bankruptcy. Ex. M (EIS-FRAZIER-PROD-001351 to 1352). | Admit that the November 12, 2019 letter from Plaintiff speaks for itself. |
| 38. | Upon receipt of the November 12, 2019 letter, which Equifax assigned the Dispute Code 053 ("Consumer states inaccurate information. Provide or confirm complete ID . . . ."), Equifax sent an ACDV to Dovenmuehle. Ex. N (EIS-FRAZIER-PROD-001323 to 1326). | Upon information and belief, admit. |
| 39. | Dovenmuehle responded to the November 12, 2019 letter by providing several narrative codes, including codes indicating that the account was "closed or paid" with a zero balance, that "account paid for less than full balance," and that the account was a second mortgage. Dovenmuehle additionally indicated that the current balance, amount past due, scheduled monthly payment, and actual payment were $0, the last payment date was September 2015, and the closed date was January 2016. Dovenmuehle also provided a "Payment Rating" of 3, signifying that Plaintiff's mortgage was "90 to 119 days past due date." Ex. N (EIS-FRAZIER-PROD-001323 to 1326). | Admit that the November 19, 2019 ACDV speaks for itself. Plaintiff denies any conclusion Defendant draws from the ACDV. |
| 40. | On December 10, 2019, Equifax sent a letter to Plaintiff confirming that it had completed its reinvestigation of her dispute. Ex. O (EIS-FRAZIER-PROD-001357 to 13136368). | Admit that the December 10, 2019 letter from Equifax speaks for itself. |
| 41. | In the December 10, 2019 letter, Equifax informed Plaintiff that her Dovenmuehle mortgage had been reported with a $0 balance, $0 actual payment amount, and $0 scheduled payment amount, as well as a date of last payment of September 2015, a date of first delinquency of October 2015, and a closed date of January 2016. The Account Status was "90 to 119 days past due," and the Additional Information section | Admit that the December 10, 2019 letter from Equifax speaks for itself. Plaintiff clarifies that the letter reported the account with an "Account History with Status Codes" section that listed Plaintiff with a "3" in |

| | | |
|---|---|---|
| | included a statement that "Account Paid For Less Than Full Balance." Ex. O (EIS-FRAZIER-PROD-001363). | October, August, June, and January 2019, and December 2018. |
| 42. | On July 2, 2020, Plaintiff sent a letter to Equifax requesting that it "investigate and erase" the Dovenmuehle account from her credit file, because she believed the account was "displaying the incorrect status. It states that the entry is presently past due, but it cannot be late. The balance clearly shows $0." Ex. P (EIS-FRAZIER-PROD-001440). | Admit that the July 2, 2020 letter from Plaintiff speaks for itself. |
| 43. | Upon receipt of the July 2, 2020 letter, which Equifax assigned the Dispute Code 007 ("disputes present/ previous account status/payment rating/account history"), Equifax sent an ACDV to Dovenmuehle. Ex. Q (EIS-FRAZIER-PROD-001436 to 1439). | Admit that the July 10, 2020 ACDV speaks for itself. |
| 44. | Dovenmuehle responded to the July 2, 2020 letter by providing several narrative codes, including codes indicating that "consumer disputes – reinvestigation in process," that "account paid for less than full balance," and that the account had been "closed or paid." Dovenmuehle additionally indicated that the current balance, amount past due, and actual payment were $0, the last payment date was September 2015, and the closed date was January 2016. Dovenmuehle also provided a "Payment Rating" of 3, signifying that Plaintiff's mortgage was "90 to 119 days past due date." Ex. Q (EIS-FRAZIER-PROD-001436). | Admit that the July 10, 2020 ACDV speaks for itself. Under "Account Status," Equifax was reporting a status of "80", which means "Account 90 days past the due date." EQX 1436 (Def. Exhibit Q). There was no "Pay-Rate" information, or data on the payment rating. *Id.* DMI updated the reporting to show an account status of "13" (or "closed"), with a pay-rate of "3". *Id.* |
| 45. | On July 24, 2020, Equifax sent a letter to Plaintiff confirming that it had completed its reinvestigation of her dispute. Ex. R (EIS-FRAZIER-PROD-001445 to 1448). | Admit that the July 24, 2020 letter from Equifax speaks for itself. |
| 46. | In the July 24, 2020 letter, Equifax informed Plaintiff that her Dovenmuehle mortgage had been reported with a $0 balance, $0 actual payment amount, $0 scheduled payment amount, $0 charge off amount, and $0 balloon pay amount, as well as a date of last payment of September 2015, a date of first delinquency of October 2015, and a closed date of January 2016. The Account Status was "90 to 119 days past due," and the Additional Information section included the statement that "Account Paid For Less Than Full Balance." Ex. R (EIS-FRAZIERPROD-001448). | Admit that the July 24, 2020 letter from Equifax speaks for itself. Equifax's dispute results show a different picture than the ACDV (Exhibit Q). The status is shown as past due 90 days, despite the closed status of the account, and Equifax clearly shows an account history with status codes reflecting 90 days late in the following months: December |

|     |     |     |
| --- | --- | --- |
|     |     | 2018, January 2019, June 2019, August 2019, and October 2019. EQX 1448 (Def. Exhibit R). |
| 47. | On August 27, 2020, Plaintiff sent a letter to Equifax, in which she informed Equifax that she "no longer wish[ed] to dispute" eight separate accounts in her credit file, including the Dovenmuehle/NLS account and Plaintiff's Chapter 7 bankruptcy. Ex. S (Frazier Ex. 9). | Admit that the August 27, 2020 letter from Plaintiff speaks for itself. |
| 48. | On September 15, 2020, Plaintiff sent a letter to Equifax, in which she disputed its reporting of the Dovenmuehle mortgage because "[t]his account has been closed and satisfied since 2016. The late payments in 2019 and 2020 aren't correct." Ex. T (EIS-FRAZIER-PROD-001833). | Admit that the September 15, 2020 letter from Plaintiff speaks for itself. |
| 49. | Upon receipt of the September 15, 2020 letter, which Equifax assigned the Dispute Code 007 ("disputes present/previous account statement/payment rating/account history"), Equifax sent an ACDV to Dovenmuehle. Ex. U (EIS-FRAZIER-PROD-001829 to 1832). | Admit that the September 25, 2020 ACDV speaks for itself. |
| 50. | Dovenmuehle responded to the September 15, 2020 dispute by updating Plaintiff's account information. Specifically, Dovenmuehle provided several narrative codes, including codes indicating that "consumer disputes – reinvestigation in process" and "account paid for less than full balance." Dovenmuehle additionally indicated that the current balance, amount past due, and actual payment were $0, the last payment date was September 2015, and the closed date was January 2016. Dovenmuehle also provided a "Payment Rating" of 3, signifying that Plaintiff's mortgage was "90 to 119 days past due date." Ex. U (EIS-FRAZIER-PROD-001829). | Admit that the September 25, 2020 ACDV speaks for itself. Plaintiff denies any conclusion Defendant draws from the ACDV. |
| 51. | On October 10, 2020, Equifax informed Plaintiff that her Dovenmuehle mortgage had been reported with a $0 balance and $0 actual payment amount, as well as a date of last payment of September 2015, a date of first delinquency of October 2015, and a closed date of January 2016. The Account Status was "90 to 119 days past due," and the Additional Information section included the statement that "Account Paid For Less Than Full Balance." Ex. V (EISFRAZIER-PROD-001838 to 1843). | Admit that the October 10, 2020 letter from Equifax speaks for itself. Equifax again reported delinquent statuses for the above-mentioned months, and also included July 2020 as the latest month with a delinquency. |
| 52. | Plaintiff claims that she was denied a mortgage and lost time in pursuing a mortgage as a result of Equifax's | Admit. |

| | | |
|---|---|---|
| | allegedly inaccurate reporting. Ex. B (Frazier Dep.) at 98:21-99:7. | |
| 53. | In 2020, Plaintiff applied for a mortgage with Mutual Federal Bank. Ex. W, Plaintiff's Response to Interrogatory No. 6. | Admit. |
| 54. | As part of the loan approval process, Mutual Federal Bank procured a copy of Plaintiff's credit report from CreditLink, dated September 10, 2020. Ex. X (Frazier Ex. 13). | Admit. Plaintiff also submits a better copy of the CreditLink credit report as Exhibit 2. |
| 55. | CreditLink is a third-party company that aggregates credit information from multiple sources—including all three of the major credit reporting agencies—and compiles that information into reports that are primarily used by mortgage lenders and landlords. Ex. B (Frazier Dep.) at 85:11-12; Ex. Y, *About*, CREDITLINK, https://creditlink.com/#about (last visited Sept. 29, 2022). | Admit. |
| 56. | In that September 10, 2020 CreditLink report, Plaintiff's Dovenmuehle mortgage was reported as "settled" and "account paid for less than full balance" with a $0 payment, a $0 balance, and $0 past due. The report also indicated that the date of last activity for the Dovenmuehle mortgage was October 2015 and that the account had a status of 90 days past due for various months in the last two years. Ex. X (Frazier Ex. 13) at 6. | Admit. |
| 57. | The information that Equifax allegedly provided to Mutual Federal Bank by way of the CreditLink report was the same information that Dovenmuehle furnished to Equifax and then repeatedly confirmed in response to each of Plaintiff's dispute letters. Ex. Z (composite exhibit at EIS-FRAZIER-PROD-3265). | Denied. The ACDV (Exhibit Q), the dispute results letter (Exhibit R), and the credit report (Exhibits X and 2) all speak for themselves. The ACDV does not report historical data and DMI's version of the same ACDV (Exhibit 5) shows that, in the historical grid, DMI responded with "dashes" in response to months that Equifax had a "3". Through "dashes," DMI was instructing Equifax to fix the erroneous lates after January 2016. |
| 58. | On or about September 22, 2020, Mutual Federal Bank sent Plaintiff a document titled "Statement of Credit | Admit. |

|  |  |  |
|---|---|---|
|  | Denial, Termination, or Change." Ex. AA (MFB_0000001 to 004). |  |
| 59. | Under a section titled "Principal Reason(s) for Credit Denial, Termination, or Other Action Taken," Mutual Federal Bank had marked boxes for "Excessive obligations" and "Insufficient income for total obligations." Ex. AA. | Admit. |
| 60. | Though one of the options that Mutual Federal Bank could have marked was "Unacceptable payment record on previous mortgage," that box was left unmarked. *Id.* | Admit that the box "unacceptable payment record on previous mortgage" was left unmarked; however, Plaintiff objects to any characterization as to why that box was left unmarked or the conditions required to mark that particular box. |
| 61. | The document also reflected Plaintiff's credit scores from Experian, Transunion, and Equifax, as well as "key factors that adversely affected" Plaintiff's credit score with each of those three agencies." Ex. AA (MFB_0000003 to 004). | Admit. |
| 62. | One of the "key factors" for each agency was "Serious Delinquency." Ex. AA. | Admit. |
| 63. | The credit score reported by Equifax was 696, which was higher than the scores reported by Experian (684) and Transunion (659). Ex. AA (MFB_0000003 to 004). | Admit. |
| 64. | Mr. David Holmes, Plaintiff's loan officer, testified that Plaintiff's mortgage was denied because of her debt-to-income ratio. Ex. BB (Holmes Dep.) at 63:19; *see also id.* at 98:18-22. | Admit that Mr. Holmes' testimony speaks for itself. Mr. Holmes also previously indicated in an email to Plaintiff that the DMI account would prevent her mortgage from going through: "**the wrong information for DMI mortgage showing late payments in 2018 when you didn't even own the home after 2016 is hurting the approval process**." *See* Exhibit 7 (MFB_0000501). Mr. Holmes also confirmed that these late payments presented an issue with getting approved under the |

| | | |
|---|---|---|
| | | FHA mortgage guidelines. *See* Exhibit 1, Holmes Dep., p. 55:9-12. |
| 65. | Mr. Holmes also testified that, based on Plaintiff's credit report, he understood that "Ms. Frazier settled her [Dovenmuehle] account for less than the full balance in or around October of 2015[.]" Ex. BB (Holmes Dep.) at 101:12-19; *see also id.* 102:10-11. | Admit that Mr. Holmes' testimony speaks for itself. |
| 66. | Plaintiff claims that, as a result of being denied a mortgage, she has suffered humiliation, stress, headaches, lack of sleep, frustration, and helplessness. Ex. B (Frazier Dep.) at 99:8-24; Ex. W (Plaintiff's Response to Interrogatory No. 10). | Admit. |
| 67. | Plaintiff never sought medical intervention or diagnosis in connection with her alleged emotional distress damages. Ex. B (Frazier Dep.) at 100:1-7. | Admit. |
| 68. | Equifax, as a credit reporting agency, relies on furnishers to report information, whether independently or in response to a dispute, to ensure that its credit reports are accurate and up-to-date. Ex. A (Willis Dep.) at 158:10-14, 172:20-23. | Admit in part. Admit that this represents Ms. Willis' testimony. Plaintiff objects to the fact that this statement represents only a partial truth regarding Equifax's responsibility to ensure that credit files are accurate and up to date. Equifax also has direct responsibilities to consumers under the FCRA to ensure their credit files are accurate and up to date. |
| 69. | Consumers can inform Equifax of information on their credit reports that they believe to be inaccurate by sending a dispute letter, which triggers a process called "reinvestigation." Ex. A (Willis Dep.) at 9:18-19. | Admit. |
| 70. | Upon receipt of a dispute letter, Equifax contacts the furnisher to verify the accuracy of its reporting through the Automated Consumer Dispute Verification ("ACDV") process. Ex. A (Willis Dep.) at 73:11-14. | Admit that this is the testimony of Ms. Willis regarding Equifax's policies. |
| 71. | Equifax also provides the furnisher with a scanned copy of the dispute letter Equifax received from the consumer. Ex. A (Willis Dep.) at 79:17-80:14. | Admit that this is the testimony of Ms. Willis regarding Equifax's policies. |
| 72. | The letter also includes a statement that a consumer may contact the furnisher if he or she does not agree with the results of the reinvestigation. Ex. V (EIS-FRAZIER-PROD-001838 to 1843) at 2. | Plaintiff admits that the October 10, 2020 Credit File Letter speaks for itself. |

| 73. | Plaintiff filed a separate lawsuit against Dovenmuehle, her mortgage servicer, in this District on November 12, 2020. *Frazier v. Dovenmuehle Mortgage, Inc.*, No. 1:20-cv-06721, Dkt. 1 (N.D. Ill. Nov. 12, 2020) ("Dovenmuehle Lawsuit"). | Admit to the facts. Denied to the extent Defendant contends this is material in the current case. |
|---|---|---|
| 74. | The Dovenmuehle Lawsuit and the instant lawsuit arise from the same set of facts and seek to recover for the same damages. Specifically, in the Dovenmuehle Lawsuit Plaintiff alleges that: (1) She incurred a mortgage obligation with Dovenmuehle in 2007 but became delinquent on the account; (2) In 2016, she entered into a short sale on the loan, settled the account for less than the full balance, and claims that she no longer had any obligation on the loan; (3) Plaintiff disputed Dovenmuehle's inaccurate reporting of the loan with "historical late payments in 2018 and 2019" with Equifax, but that Dovenmuehle did not conduct a reasonable investigation and continued to inaccurately report her loan to Equifax and Trans Union; and (4), That this reporting caused her to be denied a loan from Mutual Federal Bank. Dovenmuehle Lawsuit Dkt. 1, ¶¶ 6-15; Dovenmuehle Lawsuit Dkt. 68 (Plaintiff's Opposition to Dovenmuehle's Motion for Summary Judgment) at 2-3, 9. | Objection. Calls for a legal conclusion. Denied to the extent it is not a legal conclusion. While the facts giving rise to this lawsuit are similar to the Dovenmuehle lawsuit, Plaintiff here has brought claims against Equifax which are separate and distinct from those brought against Dovenmuehle as the FCRA lays out different obligations for furnishers and credit bureaus. The Dovenmuehle lawsuit focuses on the "Pay Status", while the present lawsuit focuses on the historical status fields, which DMI did not report to Equifax. Exhibits 5, 6, and 8. |
| 75. | In August 2022, Judge Feinerman granted Dovenmuehle's motion for summary judgment against Plaintiff, concluding that the information Dovenmuehle had reported was accurate. *Frazier v. Dovenmuehle Mortgage, Inc.*, No. 1:20-cv-06721, 2022 WL 3445801, at *3-4 (N.D. Ill. Aug. 17, 2022). | Denied. Judge Feinerman's decision related only to the Payment Rating of 3. *Frazier v. Dovenmuehle Mortgage, Inc.*, No. 1:20-cv-06721, 2022 WL 3445801, at *3-4 (N.D. Ill. Aug. 17, 2022). |
| 76. | The information that Equifax allegedly reported concerning Plaintiff's Dovenmuehle mortgage was the same information that Dovenmuehle furnished to Equifax and then confirmed in response to Plaintiff's dispute letters. Ex Z (composite exhibit comparing Dovenmuehle's ACDVs with Equifax's internal records). | Denied. The ACDV (Exhibit U), the dispute results letter (Exhibit V), and the credit report (Exhibits X and 2) all speak for themselves. The ACDV does not report historical data and DMI's version of the same ACDV (Exhibit 8) shows that, in the historical grid, DMI |

|   | responded with dashes in response to months that Equifax had a "3". |
|---|---|

# PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

1. Plaintiff alleges that Defendant was reporting a credit entry on her Equifax credit reports that included inaccurate information. Plaintiff specifically alleged that Equifax was reporting Plaintiff as late in 2018 and 2019 or currently delinquent on a debt which Plaintiff did not owe. [ECF 1], ¶¶ 10-12.

2. The account in question was opened in 2007 when Plaintiff obtained a mortgage. Deposition of Tamara Frazier ("Frazier Dep."), p. 29:1-4; 30:6. Plaintiff's Exhibit 3.

3. In January 2016, the mortgage was included in a short sale, which brought Plaintiff's account to a close with no continuing obligation and a $0 residual balance. Def. Ex. C.

4. After Plaintiff's short sale in 2016, Plaintiff no longer had any obligation to DMI and could not be reported as late. In fact, DMI confirmed that it "would be inaccurate, according to Dovenmuehle," to report Plaintiff as late after 2016. Deposition of David Fagan ("Fagan Dep."), p. 17:20-22. Plaintiff's Exhibit 1.

5. DMI testified that they never told Equifax to report Plaintiff as late after 2016. Fagan Dep., p. 96:17-18 ("We stopped reporting on this loan after it closed"); 104:2-8 (in "January of 2016").

6. Equifax also knew that Ms. Frazier's account was satisfied and closed at least as early as April 3, 2018. Deposition of Lisa Willis ("Willis Dep."), p. 42: 24-43:20. Plaintiff's Exhibit 4.

7. On July 2, 2020, Plaintiff submitted a dispute to Equifax regarding disputing the account, specifically disputing that the account was "displaying the incorrect status" and that it was portraying her as "past due." Def. Ex. P.

8. Equifax forwarded the dispute to DMI in an ACDV. Def. Exhibit Q. Under "Account Status," Equifax was reporting a status of "80", which means "Account 90 days past the due date." *Id*. There was no "Pay-Rate" information, or data on the payment rating. *Id.*

9. DMI updated the reporting to show an account status of "13" (or "closed"), with a pay-rate of "3", which means over 90 days delinquent. *Id.*

10. Code "13" means account closed. Fagan Dep., 81:20-21.

11. Payment Rating "3" means 90 days past due. *Id*. 91:20-92:15.

12. Equifax believes and expects all data furnishers comply with the Credit Reporting Resource Guide ("CRRG"). Concerning the payment history information to be reported by Data Furnishers, the CRRG lists fourteen codes that a data furnisher may use to report information. The CRRG states that "No other values are acceptable." Willis Dep. 130:14-131-24 (furnishers must follow the CRRG); 152:7-21; EIS-FRAZIER-PROD.-001957 (Plaintiff's Exhibit 18).

13. In DMI's copy of the July 24, 2020 ACDV, there is an Account History field. Plaintiff's Exhibit 5 (DMI001514-1515). In the Request field, the field populated by Equifax, there is a 3 located in the following months: October, August, June, and January 2019, and December 2018. The Response field, populated by DMI, shows "dashes" for all the above months, and all months from January 2016 forward.

14. DMI input a "dash" in the monthly payment history section, instead of confirming the "3" to indicate no reporting should be made for any months after January 2016. Fagan Dep., p. 85:7-22 92:6-94:22; 130:9-11. The dashes placed by DMI did not comply with the CRRG's instruction.

15. Equifax does not acknowledge the "dash" as a valid reporting symbol. As such, it chose to interpret the dash as an asterisk. Willis Dep., p. 151:1-21; 98:23-99:24 (Equifax disregarded DMI's "invalid code.").

16. In August 2020, Plaintiff applied for a mortgage loan with Oak Leaf Community through David Holmes, a senior mortgage loan originator. Def. Ex. W, Interrogatory Response No. 6; Deposition of David Holmes ("Holmes Dep.), p. 26:6-12, Plaintiff's Exhibit 20.

17. Plaintiff testified that she was going to be purchasing the house for her sick mother who otherwise would be homeless. Frazier Dep., p. 14:21-15:23. Plaintiff's plan was to move in with her mother to help as her mother is the sole caregiver for Plaintiff's disabled autistic nephew who has severe life-threatening medical issues. Declaration of Tamara Frazier, ¶ 3. Plaintiff's Exhibit 9.

18. Plaintiff wrote a letter to Equifax dated August 27, 2022 asking Equifax to remove the dispute notations for her accounts. Plaintiff wrote this letter because Mr. Holmes told her this would be needed to proceed with her mortgage application. Frazier Dep., p. 77:10-19.

19. DMI responded to the ACDV with an Account Status of "13" with a Payment Rating of "3" and in the Request field for Account History, a 3 in the following months: November, October, August, June, January 2019, and December 2018. Plaintiff's

20. Exhibit 6 (DMI001512-1513). The Response field, populated by DMI, shows "dashes" for all the above months, and all months from January 2016 forward.

20. Plaintiff was pre-approved for a mortgage, and submitted an offer for a property at 3564 Fletcher Ln, Aurora, IL 60506 on August 24, 2020. Frazier Dec., ¶ 4.

21. Plaintiff's offer was accepted and Plaintiff submitted a deposit, selected a real estate lawyer, scheduled an appraisal and home inspection, and secured homeowners' insurance while moving ahead with the purchase. Frazier Dec., ¶ 5.

22. Mr. Holmes later informed Plaintiff that she would not be able to proceed with the loan because of the late payments on her DMI account. Frazier Dep., p. 16:13-17:23; Frazier Dec., ¶ 6.

23. Mr. Holmes sent an email to Frazier, dated September 10, 2020. Plaintiff's Exhibit 7 (MFB_0000501). Mr. Holmes states that the lender cannot proceed with the loan approval process. He writes, "the wrong information for DMI mortgage showing late payments in 2018 when you didn't even own the home after 2016 is hurting the approval process."

24. The late payments prevented Frazier from meeting the FHA guidelines for a mortgage loan. Holmes Dep., p. 55:9-12.

25. Plaintiff "flew into a panic" and immediately attempted to correct the reporting by sending letters to both Equifax and DMI. Frazier Dec., ¶ 7.

26. Mr. Holmes noted Plaintiff's frustration stemming from the credit bureau and her attempts to fix her credit prior to the loan denial. Email from David Holmes, dated September 18, 2020. MFB_0000510-511 (Plaintiff's Exhibit 7).

27. On September 15, 2020, Plaintiff sent a letter to Equifax, in which she disputed the erroneous late payments. Specifically, she stated that "[t]his account has been closed and satisfied since 2016. The late payments in 2019 and 2020 aren't correct." Def. Ex. T.

28. DMI again reported an Account Status of "13" with a Payment Rating of "3." Def. Ex. U. DMI's copy of the ACDV shows in the Request field for Account History, a 3 in the following months: July 2020, November, October, August, June, January 2019, and December 2018. Plaintiff's Exhibit 8 (DMI001506-1507). The Response field, populated by DMI, shows "dashes" for all the above months, and all months from January 2016 forward. DMI provided these "dashes" to indicate Equifax should remove the delinquent reporting. Fagan Dep., p. 85:7-22; 92:6-94:22; 130:9-11.

29. While Plaintiff worked with Credit Nerds to learn about her credit reights, Plaintiff consistently testified that she drafted and sent the letters to Equifax herself. Frazier Dep., p. 48:20-22; 75:20-21.

30. Despite Plaintiff's efforts, she was ultimately denied the loan and the real estate contract was cancelled. Frazier Dec., ¶ 9.

31. Plaintiff testified vividly as to humiliation from the loan denial, stress from worrying about her mother being homeless, high blood pressure, sleepless nights, feeling helpless and hopeless, headaches, stress headaches, and nausea. Frazier Dep., p. 99:8-24. Because of the shame, embarrassment, and low self-worth Plaintiff was feeling, she retreated away from her family and stayed in her house, secluded, for long periods of time. Plaintiff's Dec., ¶. 10.

32. Plaintiff's consistent headaches, at least 3-4 times a week, required regular use of over-the-counter medication like Advil or Tylenol. Frazier Dec., ¶ 11.

33. Plaintiff also suffered from bouts of nausea, upset stomach, and loss of appetite, usually 2-3 times a week. Frazier Dec., ¶ 12.

34. Plaintiff also suffered from anxiety and worry, overwhelmed with hopelessness and was often unable to concentrate at work for period of time. Frazier Dec., ¶ 13.

35. Plaintiff's mother was a witness to her emotional damages, including her stress, loss of appetite, need for medication and headaches. Declaration of Vivian Davis Plaintiff's Exhibit 10.

36. Other than sending the ACDV, Equifax did not conduct any independent investigation of the information returned by DMI. Willis Dep., p. 171:10-20.

37. Since Plaintiff's claims have arisen, Equifax has instituted a new policy that specifically prevents late payments from reporting after the close date of an account. Equifax has acknowledged that such a reporting is inaccurate. Willis Dep., p. 179:23-180:10.

Dated: November 28, 2022

/s/ Daniel Zemel
Daniel Zemel, Esq.
**Zemel Law, LLC**
660 Broadway
Paterson, New Jersey 07514
T: 862-227-3106
E: dz@zemellawllc.com
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of November 2022 a true and correct copy of the foregoing document was sent to all counsel of record via the Court's ECF system.

/s/ *Daniel Zemel*
Daniel Zemel, Esq.